UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| CENTURY 21 REAL ESTATE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | |
| DENNEHY, BARNES, VENTURES, INC., | ) | |
| JOHN S. DENNEHY and THOMAS BARNES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY
JUDGMENT, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION
AND BREACH OF CONTRACT**

Plaintiff Century 21 Real Estate Corporation ("Century 21"), by and through its attorneys,

Nixon Peabody LLP, avers for its Verified Complaint for Injunctive Relief, Declaratory Judgment,

Trademark Infringement, Trademark Dilution and Breach of Contract against Defendants

Dennehy, Barnes, Ventures, Inc., Thomas Barnes and John S. Dennehy (collectively, "DBV") as

follows:

**NATURE OF THE ACTION**

1.      This action is brought pursuant to the Federal Trademark Act, 15 U.S.C. § 1051 et

seq., to prevent DBV, former Century 21 franchisees, from continuing to use and dilute Century

21's trademarks, trade dress, service marks and trade names and to recover from DBV amounts

owing under the parties' franchise agreement.

**PARTIES**

2.      Plaintiff Century 21 Real Estate Corporation ("Century 21") is a corporation

organized and existing under the laws of the State of Delaware with its principal place of business

- 2 -

at 6 Sylvan Way, Parsippany, New Jersey and it is the successor in interest to Century 21 of the

Northeast, Inc.

3.      Defendant Dennehy, Barnes, Ventures, Inc., on information and belief, is a

corporation organized and existing under the laws of the State of Massachusetts, with its principal

place of business at 12 Temple Street, Boston, Massachusetts 02114.

4.      Defendant Thomas Barnes, on information and belief, is President of Dennehy,

Barnes, Ventures, Inc. and a citizen of the State of Massachusetts, residing at 12 Temple Street,

Boston, Massachusetts 02114.

5.      Defendant Jack Dennehy, on information and belief, is Secretary of Dennehy,

Barnes, Ventures, Inc. and a citizen of the State of Massachusetts, residing at 75 Endicott Street,

Boston, Massachusetts.

## JURISDICTION AND VENUE

6.      This case arises under an Act of Congress relating to trademarks, 15 U.S.C. § 1051

et seq.  Accordingly, the Court has original jurisdiction pursuant to 28 U.S.C. § 1338.  Under

principles of supplemental jurisdiction, the Court also has jurisdiction of all claims against

Defendants arising solely under state law.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or

omissions giving rise to Century 21's claims occurred in this judicial district.  Specifically, the

Franchise Agreement created a franchise relationship between Century 21 and defendants, a

franchisee with its principal place of business in Massachusetts and defendants continue to

unlawfully use Century 21's trademarks within Massachusetts.

BOS1361748.1

- 3 -

# FACTS

## THE CENTURY 21® MARKS

8.      Century 21 is one of the largest real estate brokerage franchise systems in the United States, and is widely known as a provider of real estate brokerage services.

9.      Century 21's trademarks, service marks and logos ("CENTURY 21 Marks") are on the principal register of the United States Patent and Trademark Office.  Century 21 has the exclusive right to use and to license the CENTURY 21 Marks and derivations thereof, as well as the distinctive CENTURY 21 System, which provides real estate brokerage services to the public under the CENTURY 21® name.  Century 21 and its predecessors have continuously used each of the CENTURY 21 Marks since the date of their registration.

10.     Those registrations are in full force and effect, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065.

11.     Century 21 has given notice to the public of the registration of its trademarks and service marks as provided in 15 U.S.C. § 1111.

12.     Century 21 uses or has used the CENTURY 21 Marks as abbreviations of its brand name.

13.     Through its franchise system, Century 21 markets, promotes and provides services to its real estate brokerage franchisees throughout the United States.  In order to identify the origin of their real estate brokerage services, Century 21 allows its franchisees to utilize the CENTURY 21 Marks.

14.     Century 21 has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and trademarks to cause

- 4 -

consumers throughout the United States to recognize the CENTURY 21 Marks as distinctly

designating CENTURY 21 real estate brokerage services as originating with Century 21.

15.    The value of the goodwill developed in the CENTURY 21 Marks does not admit of

precise monetary calculation, but because Century 21 is one of the largest real estate brokerage

franchise systems in the United States and is widely known as a provider of real estate brokerage

services, the value of Century 21's goodwill exceeds hundreds of millions of dollars.

16.    The CENTURY 21® Marks are indisputably among the most famous trademarks in

the United States.

THE PARTIES' BOSTON AGREEMENT

17.    On or about February 1, 1996, Century 21 entered into a Franchise Agreement with

DBV (the "Boston Franchise Agreement") for the operation of a CENTURY 21 real estate

brokerage office located at 121 Mount Vernon Street, Boston, Massachusetts 02108.  By

addendum dated May 24, 1997, the parties subsequently agreed to an office relocation to 12

Temple Street, Boston, Massachusetts 02108 (the "Approved Boston Location").  A true copy of

the Boston Franchise Agreement and addenda thereto are attached hereto as Exhibit A.

18.    Pursuant to paragraph 2 of the Brookline Franchise Agreement, DBV was obligated

to operate a CENTURY 21 real estate brokerage office for a five-year term, during which time

DBV was permitted to use the CENTURY 21 Marks in association with the operation of its

CENTURY 21 real estate brokerage business as part of Century 21's franchise system.

19.    Pursuant to paragraph 7 of the Boston Franchise Agreement, DBV was required to

pay an initial franchise fee in the amount of $16,900, with $2,900 due upon execution of the

Boston Franchise Agreement and the balance of $14,000 due and payable as evidenced by the

delivery of a Promissory Note ("Boston Note").

- 5 -

20.      On or about November 19, 1998, as an addendum to the Brookline Franchise

Agreement and in connection with the initial fee due thereunder, DBV executed the Boston Note

in the amount of $14,000 in favor of Century 21's predecessor.  A true copy of the Boston

Promissory Note is attached hereto as Exhibit B.

21.      Pursuant to the terms of the Boston Note, default in any payment due under the

Note was grounds for termination of the Boston Franchise Agreement.

22.      Pursuant to paragraph 8A of the Boston Franchise Agreement, DBV was required

to pay service fees in the amount of 6% of the gross revenue earned, derived or received by DBV

from all real estate related transactions set forth in paragraph 8A of the Boston Franchise

Agreement ("Boston Service Fees").

23.      Pursuant to paragraph 8B of the Boston Franchise Agreement, Boston Service Fees

more than ten (10) days late bear interest from the due date until paid at the lower rate of either the

highest rate allowed by law or 5% per annum higher than the "prime rate" then currently

established by the largest bank headquartered in Massachusetts.

24.      Pursuant to paragraph 9A of the Boston Franchise Agreement, DBV agreed to pay

in addition to Boston Service Fees an amount equal to 2% of its gross revenue to the National

Advertising Fund (the "NAF") to be managed by Century 21.

25.      Pursuant to paragraph 9B of the Boston Franchise Agreement, Century 21 may

assess a late fee or accrue interest as specified in the Brookline Franchise Agreement for any NAF

contribution not timely received.

26.      Pursuant to paragraph 17 of the Boston Franchise Agreement, Century 21 could

terminate the Boston Franchise Agreement, with notice to DBV, for various reasons, including its

(a) failure to pay any amount due to Century 21 under the Brookline Franchise Agreement;

- 6 -

(b) failure to comply with trade name and logo guidelines; and (c) failure to remedy any other

breach of its obligations or warranties under the Brookline Franchise Agreement within 10 days

after receipt of written notice from Century 21 specifying one or more breaches of the Brookline

Franchise Agreement.

27.    Paragraph 18 of the Boston Franchise Agreement specified DBV's obligations in

the event of a termination of the Boston Franchise Agreement, including its obligation to

immediately cease using all of the CENTURY 21® Marks and to refrain from doing anything

which would indicate that DBV is or was a CENTURY 21 franchisee.

28.    Pursuant to paragraphs 18A and 18B of the Boston Franchise Agreement, DBV

agreed that, in the event of a termination of the Boston Franchise Agreement for any reason, it

would pay all sums then owing from DBV to Century 21 under the Boston Franchise Agreement.

29.    Pursuant to paragraph 20 of the Boston Franchise Agreement, the parties agreed

that, in the event a legal action was instituted to enforce the terms and conditions of the Boston

Franchise Agreement, "the prevailing party shall be entitled to recover all litigation costs,

including attorneys' fees."

THE PARTIES' BROOKLINE AGREEMENT

30.    On or about November 19, 1998, Century 21 entered into a Franchise Agreement

with DBV (the "Brookline Franchise Agreement") for the operation of a CENTURY 21 real estate

brokerage office located at 477 Harvard Street, Brookline, Massachusetts 02446 (the "Approved

Brookline Location").  A true copy of the Brookline Franchise Agreement and addenda thereto are

attached hereto as Exhibit C.

31.    Pursuant to paragraph 2 of the Brookline Franchise Agreement, DBV was obligated

to operate a CENTURY 21 real estate brokerage office for a ten-year term, during which time

- 7 -

DBV was permitted to use the CENTURY 21 Marks in association with the operation of its

CENTURY 21 real estate brokerage business as part of Century 21's franchise system.

32.     Pursuant to paragraph 7 of the Brookline Franchise Agreement, DBV was required

to pay an initial franchise fee in the amount of $17,500, with $8,750 due upon execution of the

Brookline Franchise Agreement and the balance of $8,750 due and payable as evidenced by the

delivery of a Promissory Note ("Brookline Note").

33.     On or about November 19, 1998, as an addendum to the Brookline Franchise

Agreement and in connection with the initial fee due thereunder, DBV executed the Brookline

Note in the amount of $8,750 in favor of Century 21's predecessor.  A true copy of the Brookline

Promissory Note is attached hereto as Exhibit D.

34.     Pursuant to the terms of the Brookline Note, default in any payment due under the

Note was grounds for termination of the Brookline Franchise Agreement.

35.     Pursuant to paragraph 8A of the Brookline Franchise Agreement, DBV was

required to pay service fees in the amount of 6% of the gross revenue earned, derived or received

by DBV from all real estate related transactions set forth in paragraph 8A of the Brookline

Franchise Agreement ("Brookline Service Fees").

36.     Pursuant to paragraph 8B of the Brookline Franchise Agreement, Brookline Service

Fees more than ten (10) days late bear interest from the due date until paid at the lower rate of

either the highest rate allowed by law or 5% per annum higher than the "prime rate" then currently

established by Mellon Bank, N.A. Pittsburgh, Pennsylvania.

37.     Pursuant to paragraph 9A of the Brookline Franchise Agreement, DBV agreed to

pay in addition to Brookline Service Fees an amount equal to 2% of its gross revenue to the

National Advertising Fund (the "NAF") to be managed by Century 21.

- 8 -

38.     Pursuant to paragraph 9B of the Brookline Franchise Agreement, Century 21 may assess a late fee or accrue interest as specified in the Brookline Franchise Agreement for any NAF contribution not timely received.

39.     Pursuant to paragraph 17 of the Brookline Franchise Agreement, Century 21 could terminate the Brookline Franchise Agreement, with notice to DBV, for various reasons, including its (a) failure to pay any amount due to Century 21 under the Brookline Franchise Agreement; (b) failure to comply with trade name and logo guidelines; and (c) failure to remedy any other breach of its obligations or warranties under the Brookline Franchise Agreement within 10 days after receipt of written notice from Century 21 specifying one or more breaches of the Brookline Franchise Agreement.

40.     Paragraph 18 of the Brookline Franchise Agreement specified DBV's obligations in the event of a termination of the Brookline Franchise Agreement, including its obligation to immediately cease using all of the CENTURY 21® Marks and to refrain from doing anything which would indicate that DBV is or was a CENTURY 21 franchisee.

41.     Pursuant to paragraphs 18A and 18B of the Brookline Franchise Agreement, DBV agreed that, in the event of a termination of the Brookline Franchise Agreement for any reason, it would pay all sums then owing from DBV to Century 21 under the Brookline Franchise Agreement.

42.     Pursuant to paragraph 20 of the Brookline Franchise Agreement, the parties agreed that, in the event a legal action was instituted to enforce the terms and conditions of the Brookline Franchise Agreement, "the prevailing party shall be entitled to recover all litigation costs, including attorneys' fees."

## THE DEFENDANTS' DEFAULTS AND TERMINATION

43.     By letter dated November 10, 2000, a true copy of which is attached as Exhibit E, Century 21 gave notice to DBV that it was in violation of the Brookline Franchise Agreement and specifically advised DBV that it was in default of its financial obligations under the Brookline Franchise Agreement and had until November 28, 2000 to cure its monetary defaults.

44.     DBV failed to cure its monetary defaults.

45.     By letter dated December 21, 2000, a true copy of which is attached as Exhibit F, Century 21 terminated the Brookline Franchise Agreement effective as of December 22, 2000 and advised DBV that it was to adhere to its post-termination obligations as specified in paragraph 18 of Brookline Franchise Agreement, including, among other things, the removal or deletion of any reference to Century 21 from all signs, contracts and listing agreements.

46.     By letter dated November 10, 2000, a true copy of which is attached as Exhibit G, Century 21 gave notice to DBV that it was in violation of the Boston Franchise Agreement and specifically advised DBV that it was in default of its financial obligations under the Boston Franchise Agreement and had until November 28, 2000 to cure its monetary defaults.

47.     DBV failed to cure its monetary defaults.

48.     By letter dated December 21, 2000, a true copy of which is attached as Exhibit H, Century 21 terminated the Boston Franchise Agreement effective as of December 22, 2000 and advised DBV that it was to adhere to its post-termination obligations as specified in paragraph 18 of Boston Franchise Agreement, including, among other things, the removal or deletion of any reference to Century 21 from all signs, contracts and listing agreements.

49.     The termination of the Brookline and Boston Franchise Agreements precludes DBV from any further use of the CENTURY 21® Marks.

- 10 -

50.     The termination of the Brookline and Boston Franchise Agreements precludes DBV from any further use of the CENTURY 21 trade name or marks in connection with its real estate brokerage businesses.

51.     Since the termination of the Brookline and Boston Franchise Agreements, DBV has continued to use the CENTURY 21 Marks in connection with its real estate brokerage services.

52.     DBV has continued to misuse the CENTURY 21 Marks despite receiving notification from Century 21 to cease and desist from the misuse of the CENTURY 21 Marks.

## COUNT I
## VIOLATION OF THE LANHAM ACT

53.     Century 21 repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 52 of the Verified Complaint.

54.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

55.     DBV has marketed and promoted and continues to market and promote its real estate brokerage services and other real-estate related businesses through the unauthorized use of the CENTURY 21® Marks, and such use has caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

56.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of

- 11 -

fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause

mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods

[or] services . . . shall be liable in a civil action . . . ."

57.     The acts of DBV in marketing and promoting its real estate brokerage services at

the Approved Brookline Location, through and with the CENTURY 21 Marks, constitutes:

>      (a)  a false designation of origin;

>      (b)  a false and misleading description of fact; and

>      (c)  a false and misleading representation of fact;

that has caused and is likely to continue to cause confusion, or to cause mistake, or deception, as

to the affiliation of DBV's real estate brokerage office with Century 21, and to cause confusion, or

to cause mistake, or deception, to the effect that Century 21 sponsors or approves of the real estate

brokerage services that DBV provides at the Approved Brookline Location, all in violation of

Section 43(a) of the Lanham Act.

58.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part

that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon

such terms as the court deems reasonable, to an injunction against another person's commercial

use in commerce of a mark or trade name, if such use begins after the mark has become famous

and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is

provided in this subsection."

59.     DBV's use of the CENTURY 21® Marks in connection with goods and services at

the Approved Brookline Location, after the CENTURY 21 Marks became famous, has caused and

will continue to cause dilution and disparagement of the distinctive quality of the CENTURY 21

Marks, and has lessened and will continue to lessen the capacity of the CENTURY 21 Marks to

identify and distinguish the goods and services of Century 21, all in violation of Section 43(c) of the Lanham Act.

60.     DBV's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

61.     DBV's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on Century 21.

62.     Century 21 has no adequate remedy at law.

63.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), Century 21 demands judgment against DBV:

a.     Preliminarily and permanently restraining and enjoining DBV, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing or promoting its real estate brokerage services and other related real estate businesses, at the Approved Brookline Location or elsewhere, through and with the CENTURY 21® Marks;

b.     Ordering that DBV account to Century 21 for any and all profits derived as a result of marketing or promoting its real estate brokerage services and other related real estate businesses at the Approved Brookline Location since December 22, 2000, the date of termination, or elsewhere, since December 22, 2000, the termination date, through and with the CENTURY 21 Marks; and

- 13 -

c.       Granting compensatory damages, treble damages, attorneys' fees,

prejudgment interest, cost of suit and such other and further relief as this Court shall deem just and

proper.

## COUNT II
## BREACH OF CONTRACT--SERVICE FEES AND ADVERTISING FEES

64.       Century 21 repeats and makes a part hereof each and every allegation contained in

paragraphs 1 through 63 of the Verified Complaint.

65.       Pursuant to paragraphs 8 and 9 of the Brookline and Boston Franchise Agreements,

DBV was obligated to pay Service Fees and contribute to the NAF.

66.       Despite its obligation to do so, DBV has failed to pay its Service Fees or make its

contributions to the NAF under the Brookline and Boston Franchise Agreements.

67.       DBV's failure to make the agreed payments of Brookline and Boston Service Fees

and contributions to the NAF constitutes a breach of the Brookline and Boston Franchise

Agreement and has damaged Century 21.

68.       In addition, DBV has benefited from its wrongful use of the CENTURY 21®

Marks after termination of the Brookline and Boston Franchise Agreement and has paid no

Service Fees or other fees to Century 21 in return for this benefit.

69.       DBV's failure to compensate Century 21 constitutes unjust enrichment and has

damaged Century 21.

**WHEREFORE**, Century 21 demands judgment against DBV for damages in the amount

of:

a.       The Service Fees and NAF contributions due and owing under the

Brookline and Boston Franchise Agreements, together with interest , attorneys' fees and costs; and

- 14 -

b.      All Service Fees and NAF contributions that should be paid to compensate Century 21 for the period during which DBV has misused the CENTURY 21 Marks and was thereby unjustly enriched, together with interest and costs.

## COUNT III
## BREACH OF PROMISSORY NOTES

70.     Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 69 of the Verified Complaint.

71.     Pursuant to paragraph 7 of the Boston Franchise Agreement, DBV was obligated to pay an initial franchise fee of $17,500.00, with $8,750 due upon its execution and the balance of $8,750 due and payable as evidenced by delivery of the Boston Note.

72.     As evidence of its obligation to pay the initial fee, DBV executed the Boston Note in favor of Century 21.

73.     DBV has failed to make all of the payments on the Boston Note.

74.     Despite due demand therefore, DBV has not made any payment on the remaining balance due under the Boston Note.

75.     DBV's failure to pay the sum due under the Boston Note has damaged Century 21.

76.     Pursuant to paragraph 7 of the Brookline Franchise Agreement, DBV was obligated to pay an initial franchise fee of $17,500.00, with $8,750 due upon its execution and the balance of $8,750 due and payable as evidenced by delivery of the Brookline Note.

77.     As evidence of its obligation to pay the initial fee, DBV executed the Brookline Note in favor of Century 21.

78.     DBV has failed to make all of the payments on the Brookline Note.

79.     The remaining amount due from DBV pursuant to the Brookline Note is $4,750 plus interest.

BOS1361748.1

- 15 -

80.     Despite due demand therefore, DBV has not made any payment on the remaining balance due under the Brookline Note.

81.     DBV's failure to pay the sum due under the Brookline Note has damaged Century 21.

**WHEREFORE**, Century 21 demands judgment against DBV for the sum due and owing under the Boston and Brookline Notes, together with interest, attorneys' fees and costs.

<u>**COUNT IV**</u>
<u>**BREACH OF CONTRACT--AUDIT**</u>

82.     Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 81 of the Verified Complaint.

83.     Pursuant to the Boston and Brookline Franchise Agreements, Century 21 is entitled to audit DBV's operations, including its financial record retention systems, to verify monthly franchise fees, transaction fees, NAF contributions and any other fees due under the Boston and Brookline Franchise Agreements.

84.     To date, despite repeated requests, DBV has not agreed to allow an audit as required by the Boston and Brookline Franchise Agreements.

**WHEREFORE**, Century 21 demands judgment in its favor and against DBV for an Order compelling DBV to allow Century 21 to conduct an audit of DBV.

- 16 -

CENTURY 21 REAL ESTATE CORPORATION

By its attorneys,


      /s/ G. Rubenstein
_____
Arthur L. Pressman (BBO #643094)
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 345-1000

Dated:  April 19, 2004

- 17 -

VERIFICATION

I, Elizabeth Danielson, the Regional Service Director for Century 21, hereby state that I have read the foregoing Verified Complaint and am familiar with the contents thereof, and that the facts set forth therein are true by my own personal knowledge and in accordance with the business records of the company, except those facts set forth on information and belief, and that as to those allegations, I believe them to be true.

I declare under penalty of perjury that the foregoing statements are true and correct. This the 14th day of April 2004.


                                                 /s/ E. Danielson
                                                 Elizabeth Danielson

BOS1361748.1