UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CENTURY 21 REAL ESTATE CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>DENNEHY, BARNES, VENTURES, INC.,<br>JOHN S. DENNEHY and THOMAS BARNES,<br><br>Defendants. | CIVIL ACTION NO. |

## CENTURY 21 REAL ESTATE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Century 21 Real Estate Corporation ("Century 21") submits this Memorandum of Law in Support of its Motion for Preliminary Injunction to enjoin defendants Dennehy, Barnes, Ventures, Inc., Jack Dennehy and Tom Barnes (collectively, "DBV"), from their obvious and intentional infringement of Century 21's valuable trademarks, trade names, and service marks.

## INTRODUCTION

Century 21 is one of the largest real estate brokerage franchise systems in the United States and is widely known as a provider of real estate brokerage services. DBV are former Century 21 franchisees, whose franchises were properly terminated on December 22, 2000. Despite having been terminated as Century 21 franchisees, and without Century 21's authorization, DBV continue to use Century 21's federally registered trademarks, trade names and service marks to market real estate brokerage services at an office operated by DBV at 477 Harvard Street, Brookline, Massachusetts 02446. This unlawful use of Century 21's intellectual property

misleads the public into believing that DBV have the authority to market and offer Century 21 real estate brokerage services as Century 21 franchisees.  This ongoing deception also results in the public's mistaken belief that DBV's real estate brokerage services originate with Century 21, one of the largest and most well-known real estate brokerage franchise systems in the United States.

There is no doubt that DBV's continued unlawful use infringes Century 21's trademarks, trade names and service marks and causes Century 21 severe and irreparable harm.  Only a preliminary injunction can ensure that DBV will cease their ongoing misconduct and staunch the irreparable harm to Century 21 from the public confusion caused by DBV's infringement and the tarnishment of Century 21's goodwill and business reputation.

## STATEMENT OF FACTS

A.   Century 21 and the Century 21 Marks.

Plaintiff Century 21 is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6 Sylvan Way, Parsippany, New Jersey and is the successor in interest to Century 21 of the Northeast, Inc.  (Verified Complaint ¶ 2).  Defendant DBV is, on information and belief, a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 12 Temple Street, Boston, Massachusetts 02114.  (Verified Complaint ¶ 3).  Defendants Thomas Barnes and Jack Dennehy are, on information and belief, President and Secretary of Dennehy, Barnes, Ventures, Inc., respectively, and reside in and are a citizens of the Commonwealth of Massachusetts.  (Verified Complaint ¶¶ 4-5).

Century 21 is one of the largest real estate brokerage franchise systems in the United States, and is widely known as a provider of real estate brokerage services.  (Verified Complaint

¶ 8). Century 21 trademarks, service marks and logos ("Century 21 Marks") are on the principal register of the United States Patent and Trademark Office. (Verified Complaint ¶ 9). Century 21 has the exclusive right to use and to license the Century 21 Marks and derivations thereof, as well as the distinctive Century 21 System, which provides real estate brokerage services to the public under the Century 21 name. Century 21 and its predecessors have continuously used each of the Century 21 Marks since the date of their registration. (Verified Complaint ¶ 9). Those registrations are in full force and effect, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. (Verified Complaint ¶ 10).

Century 21 has given notice to the public of the registration of its trademarks and service marks as provided in 15 U.S.C. § 1111. (Verified Complaint ¶ 11). Century 21 uses or has used the Century 21 Marks as abbreviations of its brand name. (Verified Complaint ¶ 12). Through its franchise system, Century 21 markets, promotes and provides services to its real estate brokerage franchisees throughout the United States. In order to identify the origin of their real estate brokerage services, Century 21 allows its franchisees to utilize the Century 21 Marks. (Verified Complaint ¶ 13).

Century 21 has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and trademarks to cause consumers throughout the United States to recognize the Century 21 Marks as distinctly designating Century 21 real estate brokerage services as originating with Century 21. (Verified Complaint ¶ 14). The value of the goodwill developed in the Century 21 Marks does not admit of precise monetary calculation, but because Century 21 is one of the largest real estate brokerage franchise systems in the United States and is widely known as a provider of real estate brokerage services, the value of Century 21's goodwill exceeds hundreds of millions of dollars. (Verified

Complaint ¶ 15). The Century 21 Marks are among the most famous trademarks in the United States. (Verified Complaint ¶ 16).

B.     The Parties' Boston Franchise Agreement.

On or about February 1, 1996, Century 21's predecessor entered into a Franchise Agreement with DBV (the "Boston Franchise Agreement") for the operation of an Century 21 real estate brokerage office located at 121 Mount Vernon Street, Boston, Massachusetts 02108. (Verified Complaint ¶ 17, Exhibit A). By addendum dated May 24, 1997, the parties agreed to an office relocation to 12 Temple Street, Boston, Massachusetts 02108 (the "Approved Boston Location"). (Verified Complaint ¶ 17, Exhibit A). Pursuant to paragraph 7 of the Boston Franchise Agreement, DBV agreed to pay an Initial Franchise Fee of $16,900.00, with $2,900 due upon execution of the Boston Franchise Agreement and the balance of $14,000 due and payable as evidenced by the delivery of a Promissory Note ("Boston Note"). (Verified Complaint ¶ 19, Exhibit B). To secure DBV's obligation to pay the Initial Membership Fee, DBV executed the Boston Note in favor of Century 21's predecessor in the amount of $14,000.00. (Verified Complaint ¶ 20, Exhibit B).

Pursuant to paragraph 2 of the Boston Franchise Agreement, DBV was obligated to operate an Century 21 real estate brokerage office until January 31, 2001, during which time DBV was permitted to use the Century 21 Marks in association with the operation of its Century 21 real estate brokerage business as part of Century 21's franchise system, provided the Boston Franchise Agreement was fully and timely performed by DBV.

Pursuant to paragraph 11 of the Boston Franchise Agreement, DBV agreed to allow Century 21 to audit DBV's operations, including its financial record retention systems, to verify

monthly membership fees, transaction fees, National Advertising Fund ("NAF") contributions and any other fees due under the Boston Franchise Agreement.

Pursuant to paragraph 17 of the Boston Franchise Agreement, Century 21 could terminate the Boston Franchise Agreement for various reasons, including, but not limited to, its (a) failure to pay, among other things, any financial obligation to Century 21 and the NAF contributions due under the Boston Franchise Agreement and/or (b) failure to remedy any other material breach of its obligations under the Boston Franchise Agreement within 10 days after receipt of written notice from Century 21 specifying one or more breaches of the Boston Franchise Agreement.

Paragraph 18 of the Boston Franchise Agreement specified DBV's obligations in the event of a termination of the Boston Franchise Agreement, including its obligation to immediately cease using all of the Century 21 Marks and to refrain from doing anything which would indicate that DBV is a Century 21 franchisee.

Pursuant to paragraph 20 of the Boston Franchise Agreement, the parties agreed that, in the event a legal action was instituted in connection with the Boston Franchise Agreement, the unsuccessful party would pay "the prevailing party's reasonable attorneys' fees and costs."

  C. <u>The Parties' Brookline Franchise Agreement.</u>

On or about November 19, 1998, Century 21's predecessor entered into a Franchise Agreement with DBV (the "Brookline Franchise Agreement") for the operation of an Century 21 branch real estate brokerage office located at 477 Harvard Street, Brookline, Massachusetts 02446 (the "Approved Brookline Location"). (Verified Complaint ¶ 30, Exhibit C). Pursuant to paragraph 7 of the Brookline Franchise Agreement, DBV agreed to pay an Initial Franchise Fee of $17,500.00, with $8,750 due upon execution of the Brookline Franchise Agreement and the balance of $8,750 due and payable as evidenced by the delivery of a Promissory Note

("Brookline Note").  (Verified Complaint ¶ 32, Exhibit D).  To secure DBV's obligation to pay the Initial Membership Fee, DBV executed the Brookline Note in favor of Century 21's predecessor in the amount of $8,750.00.  (Verified Complaint ¶ 33, Exhibit D).

Pursuant to paragraph 2 of the Brookline Franchise Agreement, DBV was obligated to operate an Century 21 real estate brokerage office until December 1, 2008, during which time DBV was permitted to use the Century 21 Marks in association with the operation of its Century 21 real estate brokerage business as part of Century 21's franchise system, provided the Brookline Franchise Agreement was fully and timely performed by DBV.

Pursuant to paragraph 11 of the Brookline Franchise Agreement, DBV agreed to allow Century 21 to audit DBV's operations, including its financial record retention systems, to verify monthly membership fees, transaction fees, NAF contributions and any other fees due under the Brookline Franchise Agreement.

Pursuant to paragraph 17 of the Brookline Franchise Agreement, Century 21 could terminate the Brookline Franchise Agreement for various reasons, including, but not limited to, its (a) failure to pay, among other things, any financial obligation to Century 21 and the NAF contributions due under the Brookline Franchise Agreement and/or (b) failure to remedy any other material breach of its obligations under the Brookline Franchise Agreement within 10 days after receipt of written notice from Century 21 specifying one or more breaches of the Brookline Franchise Agreement.

Paragraph 18 of the Brookline Franchise Agreement specified DBV's obligations in the event of a termination of the Brookline Franchise Agreement, including its obligation to immediately cease using all of the Century 21 Marks and to refrain from doing anything which would indicate that DBV is an Century 21 franchisee.

BOS1361491.1

Pursuant to paragraph 20 of the Brookline Franchise Agreement, the parties agreed that, in the event a legal action was instituted in connection with the Brookline Franchise Agreement, the unsuccessful party would pay "the prevailing party's reasonable attorneys' fees and costs."

### D. Century 21 Terminates the Boston and Brookline Franchise Agreements Due to DBV's Material Breaches of those Agreements.

By letter dated November 10, 2000, Century 21 gave notice to DBV that it was in violation of the Brookline Franchise Agreement and specifically advised DBV that it was in default of its financial obligations under the Brookline Franchise Agreement. (Verified Complaint ¶ 43, Exhibit E). Pursuant to the November 10, 2000 letter, DBV was given until November 28, 2000 to cure the defaults. (Verified Complaint ¶ 43, Exhibit E). DBV failed to cure any of the defaults within the prescribed time period. (Verified Complaint ¶ 44).

By letter dated December 21, 2000, Century 21 terminated the Brookline Franchise Agreement effective as of December 22, 2000. Century 21 also specifically told DBV that it was to adhere to its post-termination obligations as specified in paragraph 18 of the Brookline Franchise Agreement, including, among other things, the removal or deletion of any reference to Century 21 from all signs, apparels and advertisements and use of the Century 21 trade names and trademarks in connection with any aspect of DBV's real estate brokerage business and that, as of December 21, 2000, it owed Century 21 for past due fees, including amounts owed in connection with the Brookline Note. (Verified Complaint ¶ 45, Exhibit F).

**[Insert paragraphs re: Boston Termination]**

The termination of the Boston and Brookline Franchise Agreements preclude DBV from any further use of the Century 21 Marks and from any further use of the Century 21 trade name or marks in connection with its real estate brokerage business in any way.

Since the termination of the Boston and Brookline Franchise Agreement, DBV has continued to use the Century 21 Marks in connection with its real estate brokerage services and other real estate-related services at the Brookline Approved Location. (Verified Complaint ¶ 51). In addition, DBV has continued to misuse the Century 21 Marks despite receiving notification from Century 21 to cease and desist from the misuse of the Century 21 Marks. (Verified Complaint ¶ 52).

The likely effect of DBV's misuse of the Century 21 Marks is to: (1) cause public confusion, mistake or deception as to the affiliation of DBV's real estate brokerage services with Century 21; (2) confuse or deceive the public as to the origin, sponsorship or approval of DBV's real estate brokerage services and other services; (3) dilute and disparage the distinctive quality of the Century 21 Marks; and (4) lessen the capacity of Century 21's famous marks to identify and distinguish the goods and services of Century 21. (Verified Complaint ¶¶ 55, 57, 59). Those unlawful acts infringe upon Century 21's intellectual property and have caused and continue to cause immediate, irreparable harm to Century 21's business, goodwill and reputation. (Verified Complaint ¶ 61). As such, the damage done to Century 21 from DBV's pernicious misuse of the valuable Century 21 Marks is irreparable, and money damages cannot provide adequate compensation. (Verified Complaint ¶ 61).

In addition to its unlawful use of the Century 21 Marks, DBV has failed to comply with its obligation to allow an audit of its operations. Specifically, pursuant to the Boston and Brookline Franchise Agreements, Century 21 is entitled to audit DBV's operations, including its financial record retention systems, to verify monthly membership fees, transaction fees, NAF contributions and any other fees due under the Boston and Brookline Franchise Agreements.

- 8 -

(Verified Complaint ¶ 86). To date, despite repeated requests, DBV not agreed to allow an audit as required by the Boston and Brookline Franchise Agreements. (Verified Complaint ¶ 87).

## ARGUMENT

**I. CENTURY 21 SATISFIES THE REQUIREMENTS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION ENJOINING DBV'S UNLAWFUL INFRINGEMENT AND UNAUTHORIZED USE OF THE CENTURY 21 MARKS.**

In order to secure a preliminary injunction, Century 21 must demonstrate that: (1) it is likely to succeed on the merits; (2) it will suffer irreparable harm in the absence of preliminary injunctive relief; (3) the public interest will not be adversely affected by the granting of the injunction; and (4) the injury to Century 21 outweighs any harm which granting the injunction would inflict on the defendants. Concrete Machinery Co. v. Classic Lawn Ornaments, 843 F.2d 600, 611 (1st Cir. 1988). As demonstrated below, Century 21 satisfies each of the prerequisites to obtain preliminary injunctive relief.

    A.    There is More than a Substantial Likelihood that Century 21 Will Succeed on its Claims of Infringement.

Because DBV intentionally used and continue to use the Century 21® Marks without authorization, there is more than a substantial likelihood that Century 21 will prevail on its claims that DBV have violated the federal law that prohibits the unauthorized use of registered marks and the intentional passing off of services in an attempt to deceive the public. It is important to note, that since it is presumed that Century 21 will suffer irreparable harm absent injunctive relief,[1] and since DBV will not suffer any harm from injunctive relief,[2] the burden of proof for Century 21's likelihood of success argument should be reduced accordingly. A-Copy,

---

[1] See infra at § I.B.

[2] See infra at § I.C.

BOS1361491.1

-10-

Inc. v. Michaelson, 599 F.2d 450 (1st Cir. 1978); A.W. Chesterton Co. v. Chesterton, 907 F. Supp. 19, 22 (D. Mass. 1950).

DBV's unauthorized use of the Century 21® Marks clearly violates sections 32, 43(a), and 43(c) of the Lanham Act.  For a violation of section 32 of the Act, Century 21 must demonstrate that: (1) the marks are valid and legally protectable; (2) it owns the marks; and (3) DBV's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services.[3]  The Nexxus Products Co. v. CVS New York, Inc., 188 F.R.D. 11, 14-15 (D. Mass. July 8, 1999); Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 78 (2d Cir. 1994); Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).  A violation of section 43(a), which prohibits a false designation of the origin of goods or services, regardless of whether the misrepresentation involves registered marks, requires a showing that: (1) defendant has made false or misleading statements as to its own product or that of another; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury, including declining sales and a loss of good will.  See Lipton v. The Nature Co., 71 F.3d 464, 473 (2d Cir. 1995); American Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 165-66 (2d Cir. 1978).  The newly-enacted Section 43(c) of the Lanham Act prohibits a person from using another's famous mark in commerce so as to cause dilution of the distinctive

---

[3] Section 32, 15 U.S.C. § 1114(l)(a), provides, in pertinent part, that:

(1) any person who shall, without the consent of the registrant -

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distributions or advertising of any goods or services on

quality of the mark.  15 U.S.C. § 1125(c); <u>Motorsport Eng'g Inc. v. Maserati, S.P.A.</u>, 183 F. Supp. 2d 209, 226-27 (D. Mass 2001); <u>see, e.g.</u>, <u>Hormel Foods Corp. v. Jim Henson Prods., Inc.</u>, 73 F.3d 497, 507 (2d Cir. 1996) ("[t]he sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendants' use"); <u>see generally</u> 3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, § 24.13[1][a] (3d ed. 1995).

There can be no dispute that Century 21 owns its trade names and service marks and that those marks are valid and legally protectable.  All the Century 21® service marks that DBV are currently infringing have been registered on the principal register of the United States Patent and Trademark Office.  (Verified Complaint ¶ 9).  Such registration is prima facie evidence that Century 21 owns the marks and has an exclusive right to their use.  <u>See</u> 15 U.S.C. § 1115(a).

It is also clear that DBV no longer have the right to promote their services using the Century 21 Marks.  DBV are ex-licensees, and the law is clear that termination of a trademark license precludes further use by the licensee.  <u>Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc.</u>, 139 F. Supp. 2d 147, 158 (D. Mass 2001); <u>Church of Scientology Int'l v. Elmira Mission</u>, 794 F.2d 38 (2d Cir. 1986); <u>Oleg Cassini, Inc. v. Courture Coordinates, Inc.</u>, 297 F. Supp. 821 (S.D.N.Y. 1969) (any use of trademark after expiration of license is an infringement of the trademark); <u>S&R Corp. v. Jiffy Lube Int'l, Inc.</u>, 968 F.2d 371, 375 (3d Cir. 1992) (plaintiff violated sections 32 and 43 of the Lanham Act by continuing to operate a service center under the Jiffy Lube name after the termination of its Jiffy Lube Membership Agreement).

---

or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant.

Also instructive is Downtowner/Passport International Hotel v. Morlew, Inc., 841 F.2d 214 (8th Cir. 1988).  In Downtowner, the defendant continued to use the franchisor's service marks in operating its hotel after its franchise was terminated.  In upholding the district court's preliminary injunction, the Eighth Circuit held that the unauthorized use of registered marks was likely to confuse consumers and constituted a violation of Section 32 of the Lanham Act.  Id. at 219; accord Autohaus, Inc. v. BMW of N. Am., Inc., No. 92-01403-MA, 1993 U.S. Dist. LEXIS 21386, at *33 (D. Mass. Dec. 20, 1993); Burger King Corp. v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. . . .  Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated.").

There is also a substantial likelihood that DBV's use of the Century 21® Marks to promote patronage at their real estate brokerage office causes confusion among the public -- the principal element of a trademark infringement claim under the Lanham Act.[4]  There can also be no dispute that DBV deceived customers into believing that their real estate brokerage office is affiliated with Century 21.  See Church of Scientology, 794 F.2d at 41 (likelihood of confusion affirmed where defendant, a former licensee of plaintiff, continued to use plaintiff's trademark after license was terminated); Firma Melodiya, 882 F. Supp. at 1314.

As discussed above, DBV have made misrepresentations in advertisements concerning their real estate brokerage office affiliation with Century 21, which falsely designate the origin of

---

[4] Conduct that violates section 32 of the Lanham Act (unauthorized use of registered marks) also violates Section 43 of the Act (false designation of origin).  In this regard, this Court has observed that "the same facts which substantiate an action for trademark infringement under § 32 will make out an action for false designation under § 43."  Cuisinarts, Inc. v. Robot-Coupe Int'l, 509 F. Supp. 1036, 1042 (S.D.N.Y. 1981) (citing Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir.), cert. denied, 423 U.S. 868 (1975)).

-12-

their real estate brokerage services as affiliated with Century 21.  See Church of Scientology, 794 F.2d at 41 (burden of showing a likelihood of confusion met under Section 43(a) by demonstrating that moving party and infringer were concurrently using moving party's trademarks after termination of license agreement).  Moreover, the misrepresentation of their real estate brokerage office as an Century 21®-affiliated business is material and likely to influence the decisions of prospective patrons.

Finally, Century 21 is likely to prevail on the claim under Section 43(c), as DBV's association of the Century 21 Marks with their real estate brokerage office will eventually tarnish Century 21's goodwill and business reputation.  Acts constituting false designation of origin under Section 43(a) can also result in liability for dilution under Section 43(c).  See 3 J. Thomas McCarthy, supra, § 23.13[1][b].  Moreover, in cases construing state anti-dilution statutes, courts have held that tarnishment can occur when the trademark is linked to goods and services of shoddy quality.  Hormel Foods, 73 F.3d at 507.

Here, Century 21 terminated the Boston and Brookline Franchise Agreements because DBV failed to cure financial defaults under those agreements.  Accordingly, even if some of the customers may not be confused by DBV's infringing use of the Century 21 Marks, there remains a likelihood that those customers will draw a negative impression from the association between the Century 21® Marks and the services offered by DBV that have not been certified to meet Century 21's requirements.  That negative association will tend to dilute the distinctive qualities that the Century 21 Marks enjoy.  See, e.g., Hormel Foods, 73 F.3d at 507; Academy of Motion Pictures Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991) (construing California anti-dilution statute).  Here, with DBV misusing the Century 21's Marks --- Century 21's authentic seal ---it is highly likely that Century 21 will succeed on its

- 13 -

claim that DBV's unauthorized use of its registered marks violates sections 32 and 43 of the Lanham Act.

      B.    <u>Century 21 Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction.</u>

Trademark infringement irreparably harms the trademark owner's goodwill and business reputation because of the public's association of its mark with non-identical goods or services. That is so because the trademark owner loses control over its goodwill and reputation while its marks are being misused by the infringing party. <u>See, e.g.</u>, <u>Church of Scientology</u>, 794 F.2d at 43 (the "unauthorized use of a mark by a former licensee invariably threatens injury to economic value of the goodwill and reputation associated with a licensor's mark"); <u>Opticians Ass'n</u>, 920 F.2d at 195 (grounds for finding irreparable injury include "loss of control of reputation, loss of trade and loss of goodwill"); <u>S&R Corp.</u>, 968 F.2d at 378 ("[l]ack of control amounts to irreparable injury"). As the First Circuit has observed, "[f]ew harms are more corrosive than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." <u>Hypertherm, Inc. v. Precision Prods., Inc.</u>, 832 F.2d 697, 700 (1st Cir. 1987).

Here, Century 21 has shown that DBV have impermissibly used the Century 21® Marks in association with real estate brokerage services that have not met Century 21's standards. This situation is a textbook case of irreparable harm for two reasons. First, the continued use of a trademark after breach of the franchise agreement is alone dispositive of the infringement issue. <u>Dunkin Donuts, Inc. v. Gav-Stra Donuts, Inc.</u>, 139 F. Supp. 2d 147, 158 (D. Mass. 2001). Therefore, if this Court finds that trademark infringement has occurred, Century 21 has suffered irreparable harm as a matter of law. <u>See</u> <u>Concrete Mach. Co. v. Classic Lawn Ornaments</u>, 843 F.2d 600, 611 (1st Cir. 1988) (irreparable harm presumed where copyright infringement is

shown); Church of Scientology, 794 F.2d at 44 ("a licensor that establishes infringing use and consumer confusion in a trademark suit brought against its former licensee has proved irreparable harm as a matter of law"); S&R Corp., 968 F.2d at 378 ("trademark infringement amounts to irreparable injury as a matter of law").

Second, the confusion to the public created by DBV's misrepresentations also presents the likely threat of irreparable injury to Century 21.  The most obvious type of injury is the confusion caused when a prospective Century 21 patron chooses, based on DBV's misrepresentation, to engage the services of DBV (instead of an authorized Century 21 franchise office) and never realizes that DBV's real estate brokerage services are, in fact, not affiliated with the Century 21® System.  That type of consumer confusion is precisely the harm that the Lanham Act and its injunctive remedies are designed to cure.  See S&R Corp., 968 F.2d at 378 ("[i]rreparable injury can also be based on the possibility of confusion") (citation omitted).  Accordingly, Century 21 has shown that it will be irreparably harmed without preliminary injunctive relief.

  C. <u>The Balance of Hardships on the Respective Parties Favors Issuance of Injunctive Relief.</u>

The settled authority is that the equities in the case of trademark infringement favor granting preliminary injunctive relief.  See e.g., S&R Corp., 968 F.2d at 378; Opticians Ass'n, 920 F.2d at 195.  In United States Jaycees v. Philadelphia, 639 F.2d 134 (3d Cir. 1981), the Third Circuit explained that:

> Protection of infringers is not a purpose of the Lanham Act.  On the contrary, the Act's objective is the protection of the trademark and the public.  Thus, we hold that the avoidance of confusion to the infringer's interests cannot support an order permitting the continued use of the trademark . . . .

-16-

Id. at 142.  In this case, there is *no* harm to DBV (let alone any irreparable harm) if the Court preliminarily enjoins their continued infringement of the Century 21® Marks.  Given Century 21's demonstration of irreparable harm and no harm to DBV, the balance of equities strongly favors the granting of preliminary relief.

> D. The Public Interest Will be Served by an Injunction Prohibiting DBV's Use of the Century 21 Marks.

Granting a preliminary injunction here will advance the Congressional policy of protecting the public against deception or confusion.  Church of Scientology, 794 F.2d at 44; Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 156 (3d Cir. 1984) ("Congress has in the Trademark Act made the policy determination that the public interest is advanced by recognition of property interests in trademarks.  Thus the public interest is advanced by preventing the erosion of the value of such interests.").  In a case involving the continued use of a trademark by an ex-licensee, the Second Circuit has stated that the public interest was harmed from the probability of consumer confusion arising out of the concurrent use of a trademark because the ex-licensee's use "confuses and defrauds the public."  Church of Scientology, 794 F.2d at 44; accord Burger King Corp. v. Mason, 710 F.2d at 1493; United States Jaycees, 639 F.2d at 142.

Here, the injury to the public is patent.  DBV have promoted their service to the public as being associated with Century 21 when the reality is that the license has been terminated.  Unless DBV are enjoined from continuing to misuse Century 21's intellectual property rights, the public will continue to be confused and misled by DBV's conduct, all to the detriment of Century 21's intellectual property rights.  A preliminary injunction will vindicate the public interest as expressed by Congress in the Lanham Act.

## II. CENTURY 21 IS ENTITLED TO AN ORDER REQUIRING DBV TO SUBMIT TO AN AUDIT IN ACCORDANCE WITH THE FRANCHISE AGREEMENT.

Based on the language of the Boston and Brookline Franchise Agreements, Century 21 is clearly entitled to conduct an audit of DBV. Specifically, pursuant to the Boston and Brookline Franchise Agreements, Century 21 is entitled to audit DBV's operations, including its financial record retention systems, to verify monthly membership fees, transaction fees, NAF contributions and any other fees due under the Boston and Brookline Franchise Agreements. (Verified Complaint ¶ 86). To date, despite repeated requests, DBV have not agreed to allow an audit as required by the Boston and Brookline Franchise Agreements. (Verified Complaint ¶ 87).

A determination as to whether Century 21 is entitled to an Order compelling DBV to submit to an audit is not factually complex. Indeed, given that the Boston and Brookline Franchise Agreements grant Century 21 audit rights, the only factual issue to be determined by the Court is whether DBV has refused to permit Century 21 to conduct an audit. If DBV contends that Century 21 is not entitled to conduct an audit, they must provide this Court with proof of such a claim. Moreover, even if DBV claim that they have not resisted Century 21's efforts to conduct an audit, they should be willing to assure the Court that they will permit an audit to take place, as per the terms of the Boston and Brookline Franchise Agreements.

Unless the Court orders DBV to submit to an audit, Century 21 will be denied its right to an audit pursuant to the Boston and Brookline Franchise Agreements. Such an audit is necessary because it will permit Century 21 to verify the monies being received by DBV and whether DBV have been making required payments to Century 21. Put simply, an audit will allow Century 21 to ascertain the state of its financial interest in relation to DBV and end DBV's ongoing breach of the Boston and Brookline Franchise Agreements.

-18-

## **CONCLUSION**

For all the forgoing reasons, Century 21's motion for a preliminary injunction should be granted in all respects.

CENTURY 21 REAL ESTATE
CORPORATION

By its attorneys,


      /s/ G. Rubenstein
Arthur L. Pressman (BBO #643094)
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000


Dated: April 19, 2004