UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CENTURY 21 REAL ESTATE CORPORATION ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DENNEHY, BARNES, VENTURES, INC., ) <br> JOHN S. DENNEHY AND THOMAS BARNES ) <br> ) | C.A. 04-10785 DPW |

DEFENDANTS' DENNEHY/BARNES, VENTURES, INC.'S AND
THOMAS BARNES' OPPOSITION TO PLAINTIFF CENTURY 21 REAL ESTATE
CORPORATION'S MOTION FOR A PRELIMINARY INJUNCTION

Introduction

The Court should deny Plaintiff's request for injunctive relief because Defendants are no longer engaging, and will not in the future engage, in any offending conduct, and thus, there exists no threat that plaintiff will suffer future irreparable harm. Accordingly, the Plaintiff's motion is moot.

Facts

In 1996, Thomas Barnes and John S. Dennehy, Jr. organized Dennehy/Barnes Ventures, Inc. ("Dennehy/Barnes") d/b/a Sentinel, a corporation in the business of residential and commercial real estate. See Affidavit of Thomas Barnes in Opposition to Century 21 Real Estate Corporation's Motion for Preliminary Injunction ("Barnes Aff."), ¶3. Pursuant to a Franchise Agreement dated February 1, 1996 between Dennehy/Barnes and Century 21 Real Estate Corporation ("Century 21"), Dennehy/Barnes began operating a real estate sales and leasing franchise under the name Century 21 Sentinel. See id.

In 1998, Dennehy/Barnes purchased Fidelity Group, Incorporated ("Fidelity Group") which, at the time, was not in the business of residential and commercial real estate. See Barnes Aff., ¶4. By Franchise Agreement dated November 19, 1998 between Dennehy/Barnes, as owner of Fidelity Group, and Century 21, Fidelity Group became a Century 21 franchisee. See id. Fidelity Group operated a real estate sales and leasing franchise under the name Century 21 Fidelity. See id.

Century 21 purportedly terminated the Sentinel and Fidelity Franchise Agreements in December 2000. See Barnes Aff., ¶5. On October 29, 2001, Century 21 filed a Complaint in Boston Municipal Court seeking to recover money allegedly due and owing under the Franchise Agreements (the "Century 21 Litigation"). See id. Thereafter, in April 2002, Thomas Barnes purchased John Dennehy's interest in Dennehy/Barnes, thereby becoming the sole owner of Fidelity Group. See id., ¶6. Dennehy/Barnes[1] is now an inactive corporation. See id.

In December 2002, Dennehy/Barnes, Thomas J. Barnes d/b/a Sentinel and Century 21 Fidelity, John S. Dennehy Jr. d/b/a Century 21 Sentinel and Century 21 Fidelity, Fidelity Group, Inc., and Century 21 resolved the Century 21 Litigation. See Barnes Aff., ¶7. In connection with the parties' Settlement Agreement, Century 21 agreed to release, among others, Dennehy/Barnes, Thomas J. Barnes d/b/a Sentinel and Century 21 Fidelity, John S. Dennehy Jr. d/b/a Century 21 Sentinel and Century 21 Fidelity, Fidelity Group, Inc. from the debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands, and liabilities as of the date of the release, including but not limited to the causes of actions arising out of the balance due under the Franchise Agreements. See id.

---

[1] Because Dennehy/Barnes is no longer an active corporation, Fidelity Group, not Dennehy/Barnes, would be the proper defendant in this action.

Currently, Fidelity Group does business under the name Fidelity Group Real Estate Services. Fidelity Group has, on numerous occasions, contacted Multiple Listing Services ("MLS") to inform them that it is no longer affiliated with Century 21 and to request that any reference to Century 21 be removed from Fidelity Group's MLS listings. See Barnes Aff., ¶8. Fidelity Group has been assured by MLS that its listings bear no reference to Century 21. See id.[2]

Fidelity Group has removed the name "Century 21" from its sign. See Barnes Aff., ¶9 and Tab A. It has removed all references to Century 21 from its marketing, promotion, and brokerage materials. See id. Fidelity Group is no longer marketing, promoting, or offering real estate brokerage services at its offices at 477 Harvard Street, Brookline, Massachusetts, or at any other location, under the name of Century 21 Fidelity Group. See id. Fidelity Group is not using any print or telecommunication advertisements, Multiple Listing Service listings, drafts, labels, signs, flyers, billboards, stationery, envelopes, applications, booklets, brochures, catalogues, manuals, clothing, circulars, pamphlets, periodicals, bulletins, instructions, minutes, other communications, purchase orders, contracts, agreements, options to purchase, deeds, memoranda of agreements, assignments, licenses, books of account, orders, accounts, working papers, and plans that employ or relate, in any manner, to Century 21's trade names, service marks and trademarks. See id.

Fidelity Group will not, in the future, reference Century 21 in its marketing, promotion, and brokerage materials. See Barnes Aff., ¶10. Fidelity Group will not market, promote, or offer real estate brokerage services at its offices at 477 Harvard Street, Brookline, Massachusetts, or at any other location, under the name of Century 21 Fidelity Group. See id. Fidelity Group

---

[2] While Fidelity Group has been assured that Fidelity Group's listings shall bear no reference to Century 21, it is not possible to guarantee that all old listings are purged from the internet. See Barnes Aff., ¶8.

will not use any print or telecommunication advertisements, Multiple Listing Service listings, drafts, labels, signs, flyers, billboards, stationery, envelopes, applications, booklets, brochures, catalogues, manuals, clothing, circulars, pamphlets, periodicals, bulletins, instructions, minutes, other communications, purchase orders, contracts, agreements, options to purchase, deeds, memoranda of agreements, assignments, licenses, books of account, orders, accounts, working papers, and plans that employ or relate, in any manner, to Century 21's trade names, service marks and trademarks.  See id.

Argument

I.  The Preliminary Injunction Should Be Denied As Moot

Defendants have discontinued using and/or displaying the CENTURY 21 Marks and associated trade names, service marks, and trademarks in the operation of their real estate brokerage business.  Accordingly, plaintiff's request for injunctive relief should be denied as moot.  Indeed, "[b]ecause injunctive relief looks in the future, and is designed to deter rather than punish, relief will be denied if the conduct has been discontinued on the ground that the dispute has become moot and does not require the court's intervention." Wright & Miller, 11A Federal Practice and Procedure §2942.  See also Broadcast Music, Inc. v. Arlos, 682 F.Supp. 1, 2 (D. Mass. 1986) (crediting the defendant's statement that he was not longer in the business of operative vending machines, Court denied as moot plaintiff's request for a permanent injunction against further copyright infringement).

In American Board of Psychiatry and Neurology, Inc. v. Johnson-Powell, the First Circuit affirmed the District Court's denial of plaintiff's motion for preliminary injunctive relief where defendant had submitted an affidavit promising not to repeat her infringing conduct and, thus, plaintiff had failed to demonstrate a sufficient likelihood of irreparable harm in the near future.

In affirming the District Court's decision, the First Circuit reasoned that "while certification mark and trademark infringements may be presumed without more to cause irreparable harm, there is no parallel presumption that because such infringements have occurred in the past, they will inevitably be continued into the future." Id. at 4. In light of defendant's affidavit, the District Court was satisfied, and the Appellate Court agreed, that there was "no prospect that there would be [future] occasions of infringement." Id. at 4.

The United State District Court for the Southern District of New York's decision in Greilsheimer v. Ferber Chan & Essner, is also instructive here. See 1998 WL 547092 (S.D.N.Y. 1998). In Greilsheimer, plaintiff, a former named partner in a law firm sued the Firm for trademark infringement. "In support of his Lanham Act claims, plaintiff allege[d] that despite repeated demands, Defendants continue[d] to use Plaintiff's name and advertise[d] his purported affiliation with the Firm including by using Plaintiff's name on stationary, signage and referring to the Firm as Ferber Greilsheimer Chan & Essner." Id. at 2 (internal quotations omitted). Plaintiff requested that the Court enjoin defendants from using the plaintiff's name in any manner which would suggest an affiliation with the defendants. Id. at 3.

In declining to issue the requested relief, the Court noted that new stationary had been ordered, plaintiff's name had been deleted from the sign in the Firm's reception area, and defendants had ceased answering the phone with plaintiff's name. Id. at 3. Since defendants had corrected the offending conduct, the Court held that plaintiff had not met the required showing of irreparable harm, which requires a "'real or immediate threat that the plaintiff will be wronged again.'" Id., quoting Schroedel v. New York Univ. Med. Ctr., 885 F. Supp. 594, 598 (S.D.N.Y. 1995). The Court reasoned that "[i]t is illogical to assume that defendants would go through the significant trouble and expense of having the Firm's sign or its stationary changed back to once

again include plaintiff's name, and as illogical to assume that the Firm would answer phone calls with plaintiff's name at some future point." Id. at 3. Accordingly, since defendants were no longer using plaintiff's name, and because there was no logical reason to assume that they would use plaintiff's name again sometime in the future, the Court denied the injunction as moot. See id.

In this action, Thomas Barnes, principal and owner of Fidelity Group, Inc., has stated under oath, and provided pictures establishing, that Fidelity Group has discontinued using and/or displaying the CENTURY 21 Marks and associated trade names, service marks, and trademarks. See Barnes Aff., ¶¶8-9. Mr. Barnes has also attested to the fact that Fidelity Group will not use the CENTURY 21 Marks and associated trade names, service marks, and trademarks in the future, and has even agreed to enter into a stipulation to that effect.[3] See id., ¶10. Under these circumstances, where the offending conduct has ceased, and the plaintiff is therefore unable to establish the threat of future irreparable harm, injunctive relief should be denied as moot. See American Board of Psychiatry, supra; Greilsheimer, supra. See also Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 13 (1st Cir.1986) (affirming district court's denial of injunction against defendant who had previously sold infringing garments but had removed them from its racks prior to the preliminary injunction hearing).

II.   Plaintiff's Request For An Audit Should Be Denied

In 2002, Century 21 and Defendants settled a lawsuit in Boston Municipal Court relating to amounts due under the Franchise Agreements. See Barnes Aff., ¶7. Pursuant to that settlement, Century 21 agreed to release, among others, Dennehy/Barnes, Thomas J. Barnes d/b/a Sentinel and Century 21 Fidelity, John S. Dennehy Jr. d/b/a Century 21 Sentinel and

---

[3] Defendants offered to enter into a Court ordered stipulation agreeing, in substance, to the relief request by Plaintiff. The offer was ignored.

Century 21 Fidelity, Fidelity Group, Inc. from the debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands, and liabilities as of the date of the release, including but not limited to the causes of actions arising out of the balance due under the Franchise Agreements. See id. Ignoring the release, Plaintiff attempts to use the terms of the Franchise Agreement as an improper discovery tool in this action. The Court should not permit this tactic.

Moreover, Plaintiff fails to establish a basis, nor does one exist, for the Court to require an audit at this preliminary stage of the proceedings. Plaintiff claims that "[a] determination as to whether Century 21 is entitled to an Order compelling DBV to submit to an audit is not factually complex." That is not standard for preliminary relief, however. Plaintiff has not, nor can it, establish that it will suffer irreparable harm without the requested relief. Accordingly, Plaintiff's request for an audit should be denied.

<u>Conclusion</u>

For the foregoing reasons, Defendants Dennehy/Barnes, Ventures, Inc. and Thomas Barnes request that Plaintiff Century 21 Real Estate Corporation's Motion be DENIED.

DENNEHY/BARNES, VENTURES, INC.
AND THOMAS BARNES,

By their attorneys,

/s/ Kenneth D. Small
Kenneth D. Small, BBO# 567868
Pamela A. Zorn, BBO# 640800
Sherin and Lodgen LLP
100 Summer Street
Boston, MA 02110
(617) 646-2000

Dated: May 28, 2004